RAMSEY & MONTGOMERY v. EMPIRE TIMBER & LUMBER CO.

(Court of Civil Appeals of Texas. Jan. 14, 1911. Rehearing Denied Feb. 9, 1911.)

1. PARTNERSHIP (§ 5*)—CREATION OF RELATION.

Where an existing partnership enters into an agreement with a corporation by which the parties are to purchase a stock of lumber to be paid for by the corporation and by the firm, and to be sold by the corporation, and the proceeds to be divided between the corporation and the firm, and the firm purchases a stock of lumber for joint account and pays therefor, of which the corporation has knowledge, and the corporation thereafter disposes of the stock on joint account, and receives and retains its share of the profits, the parties are partners in the transaction.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 15; Dec. Dig. § 5.*]

2. PARTNERSHIP (§ 9*)—SHARING PROFITS AS COMPENSATION.

Where a partnership buys a stock of lumber for its own benefit, and then contracts with a corporation to sell the stock for it for a compensation or commission of one-third of the net profits, the parties are not partners.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 9.*]

3. TRIAL (§ 250*) — INSTRUCTIONS — APPLICATION TO PLEADINGS AND ISSUES.

Under Rev. St. 1895, art. 1317, which provides that the court shall instruct the jury as to the law arising on the facts, the instructions must be confined to the issues made by the pleadings and evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586; Dec. Dig. § 250.*]

4. TRIAL (§ 253*) — INSTRUCTIONS—IGNORING ISSUES.

Where the evidence, in an action on a note, showed that plaintiff was to have one-third of the profits, if any, arising from a lumber transaction engaged in by the parties, but was conflicting as to whether such part was plaintiff's share of profits as such or compensation by way of commission, instructions, abstractly correct, that if plaintiff did not furnish any part of the purchase price, or was not under the contract to do so, nevertheless, if the agreement was that he was to make sales of the lumber and get one-third of the net profits, this was a partnership and rendered plaintiff liable for one-third of the losses, were properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by the Empire Timber & Lumber Company against Ramsey & Montgomery, with cross-action by defendants. Judgment for plaintiff, and defendants appeal. Affirmed.

W. D. Gordon and Oliver J. Todd, for appellants. Smith & Fleming and John Broughton, for appellee.

REESE, J. The Empire Timber & Lumber Company instituted this suit in the district court against Ramsey & Montgomery to recover the amount due upon a promissory note for $750 executed by defendants to plaintiff. Defendants pleaded general demurrer and general denial, and specially set up the following facts: "That B. R. Moses, then acting for the benefit of himself and others who subsequently formed the plaintiff company, entered into an agreement with these defendants by the terms of which the said defendants were to purchase a certain stock of lumber known as the Grubbs stock, which stock was to be resold by and through said B. R. Moses, and the Empire Timber & Lumber Company, thereinafter to be formed, for whose benefit the contract was entered into, and it was mutually agreed by said parties that they would contribute equally to the purchase price of said lumber and share equally the profits and losses resulting from the resale of said property, which resale was to be made by and through Moses and said Empire Timber & Lumber Company when

formed. That the aforesaid contract became the property of and was adopted by, and the terms and conditions thereof adopted and ratified by, the Empire Timber & Lumber Company, and said adoption and ratification was furthermore accepted by these defendants, and same became a binding obligation and agreement of said plaintiff for whose benefit said contract was made by these defendants."

It was further alleged that in pursuance of this agreement the stock of lumber was purchased by plaintiff and defendants, the entire purchase price being advanced by defendants, and "the Empire Timber & Lumber Company being carried by defendants as to its interest," defendants, being in need of funds, drew a draft on plaintiff for $750, which was paid and credited by defendants upon the unpaid share of plaintiff in the purchase price of the lumber; that plaintiff afterwards requested defendants to execute a note for the amount, which they did, being the note sued on; "that the same might be carried by them for the convenience of the plaintiff." Defendants further alleged that there was no consideration for said note, that they were not indebted to plaintiff in any sum, but that, on the contrary, plaintiff was at that time, and is now, indebted to them in as large amount as its share of the losses upon said venture. Defendants further set out in detail the facts to show that in the purchase and sale of said lumber there were large losses which it is alleged should be borne by them and plaintiff in the proportion of one-third by each of defendants and one-third by plaintiff, plaintiff's share of said losses being alleged to be $1,348.67, which they plead in reconvention, and for which they prayed judgment.

By supplemental petition plaintiff pleaded that it is a corporation and had no power under its charter to enter into the partnership alleged in the answer, and it is further denied generally and specially that it ever entered into the partnership agreement as alleged. A trial with a jury resulted in a verdict and judgment for plaintiff for the amount due upon the promissory note, and against defendants on their cross-action. Their motion for new trial having been overruled, defendants prosecute this appeal. The evidence was sufficient to support the verdict in both particulars and we therefore find that the appellants were indebted to the plaintiff in the amount found, being the amount due upon the note, and that there was no partnership, as alleged by them.

The court charged the jury as follows: "You are further instructed that if you shall believe from a preponderance of the evidence before you that on or about the time alleged in the answer of defendant, the said defendant partnership entered into an agree-

ment or contract with the Empire Timber & Lumber Company, thereafter to be organized, or with the said B. R. Moses, acting for said plaintiff company, whereby it was contracted and agreed between them that the said plaintiff corporation and the said defendant partnership should purchase a certain stock of lumber described in the pleadings and evidence as the Grubbs stock of lumber, and you further believe from the evidence that such purchase was to be made by the said plaintiff corporation, or the said B. R. Moses, acting for said corporation, and the said defendant partnership, with the understanding that the same should be paid for by the said plaintiff corporation and by said partnership, with the view that said stock of lumber should be sold by said plaintiff corporation and the proceeds thereof should be divided between said plaintiff corporation and said defendant partnership, the said plaintiff corporation to share in one-third of the profits arising from said venture, and the defendant partnership to have two-thirds of the profits arising from said venture, and you further believe from the evidence that in accordance with such contract and agreement the defendant partnership did purchase said stock of lumber for the joint account and benefit of itself and said plaintiff corporation, and paid the purchase price of said stock of lumber either in cash or executed its notes or obligations therefor in a manner that was satisfactory to the receiver then having said stock of lumber for sale; and you shall further believe from the evidence that such purchase after being so made by the defendant partnership was made known to the plaintiff corporation; and you further believe from the evidence that thereafter the plaintiff corporation under the terms of its said contract with defendant partnership undertook to, and did, dispose of said stock of lumber for the joint account and benefit of itself and said defendant partnership, or did dispose of any portion of said stock of lumber under such contract or agreement with said defendant partnership, and received and retained its (said plaintiff corporation's) share of the profits arising out of the sale of said lumber according to the terms of its said agreement with defendant partnership, if any, then I instruct you that said plaintiff corporation and defendant partnership were, in contemplation of law, partners in the undertaking of the purchase and sale of said stock of lumber, and if you so find the facts to be, you will find that said corporation was a partner with said partnership."

By the first assignment of error this charge is assailed on the ground that it was affirmative error for the court to charge the jury that, in order to create a partnership, plaintiff must have agreed to contribute one-third of the original purchase price of the lumber. It is a sufficient answer to this assignment that the charge does not do this. The charge

embodies the proposition that the facts stated (following the allegations of the pleadings and the evidence of appellants) would constitute a partnership, and this is undoubtedly correct. In any view of the case this did not constitute affirmative error.

The court further charged the jury that if appellants bought the stock of lumber for its own benefit, and then entered into an agreement with appellee whereby it should handle and sell the stock for appellants for a compensation for so doing, of one-third of the net profits to accrue to appellants, over and above the purchase price of the lumber, the parties were not partners. This was a correct statement of the law upon the facts as presented by the testimony introduced by appellee, and presented correctly the law upon its side of the case. There is nothing in the opinion of the Supreme Court in the case of Kelley Island Co. v. Masterson, 100 Tex. 38, 93 S. W. 427, or Cothran v. Marmaduke, 60 Tex. 370, inconsistent with this, and the doctrine is supported by Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7, Stevens & Andrews v. Bank, 62 Tex. 501, and many other cases. Brown v. Watson, 72 Tex. 216, 10 S. W. 395; Railway Co. v. McFadden, 91 Tex. 203, 42 S. W. 593; Missouri Pac. Ry. Co. v. Johnson (Sup.) 7 S. W. 840; System Co. v. Exchange Bank, 61 S. W. 509; Fouke v. Brengle, 51 S. W. 520; 30 Cyc. 372, 376.

Although the charge first above referred to did not, in any view of the law, present affirmative error, appellant sought by various requested charges to have presented to the jury the proposition that if appellee did not furnish any part of the purchase price, or was not, under the contract, to do so, nevertheless if the agreement was that he was to make sales of the lumber and get one-third of the net profits, this constituted a partnership and rendered appellee liable for one-third of the losses. These several charges were refused and this action of the court is made the ground of several assignments of error all of which may be considered together as presenting one general proposition. If it be conceded that these charges, or any of them, state correct propositions of law in the abstract, in so far as they depart from the propositions laid down for the guidance of the jury in the court's charge, they present a case not presented by either the pleadings or evidence. We have set out the substance and in part the language of appellants' pleadings as to the nature of the contract with appellee acting through its general manager, Moses. The contract pleaded was that the lumber was to be bought for the joint account of the parties, appellants to pay two-thirds of the purchase price and appellee one-third, and that appellee was to sell the lumber and take one-third of the profits. It was further alleged that appellants advanced all the purchase money, "the Empire Timber & Lumber Company being

carried by defendants as to its interest." Appellants' testimony, if true, established this contract, and this is what they claimed to be the effect of the documentary evidence introduced, consisting of letters and telegrams of Moses. On the contrary, the evidence of Moses, testifying for appellee, if true, established that the appellee had nothing to do with the lumber except to sell the same for a commission, that it at first proposed to do so for a fixed commission of $1 per thousand feet, but upon appellants' objecting, it agreed to sell the lumber for a commission of one-third of the net profits over and above the price paid by appellants for the lumber. There was nothing in the pleadings or evidence of either of the parties as to any agreement that appellants were to buy the lumber for joint account and pay all the purchase price themselves, and a charge as to the rights of the parties under this kind of a contract would, even if correct, have been a mere abstraction. The entire charge of the court, both that portion presenting appellants' contention and that presenting appellee's contention, was based upon the facts pleaded and supported by the evidence. This was all the court was required to do, and all that it could properly do. It is hardly necessary to cite authority in support of the proposition that the charge of the court must be confined to the issues made by the pleadings and evidence. It is provided by statute that the court shall instruct the jury "as to the law arising on the facts." Rev. St. 1895, art. 1317; M., K. & T. Ry. Co. v. Carter Bros., 95 Tex. 485, 68 S. W. 159; Giddings v. Baker, 80 Tex. 314, 16 S. W. 33; Boating Ass'n v. Steamship Co., 80 Tex. 378, 16 S. W. 112; Nations v. Thomas, 25 Tex. Supp. 223. The court says in Giddings v. Baker, supra: "The plaintiffs did not claim because of Baker's silence; they sought to recover because, as they alleged, he had spoken falsely. Whether the legal proposition involved in the instruction is correct or not we need not pause to inquire. It was not applicable to the facts of the case and should not have been given." In each of these requested charges the taking of one-third of the profits by appellee is spoken of as constituting a partnership. It is undeniable that under the contract appellee was to have one-third of the profits, but the essential distinction between the respective contentions of the parties is that appellee was to get, according to its contention, one-third of the profits as its compensation for selling the lumber, by way of commission, and not as its share of the profits in a business deal in which the parties were all interested. The charges requested, if otherwise correct, ignored this distinction and for that reason alone should not have been given.

Having submitted correctly the law applicable to the exact issues presented by the pleadings and evidence, it would not have been proper for the court to go further and present propositions of law, even if abstractly correct, applicable to a state of facts neither pleaded nor proven. We are of the opinion that the court did not err in refusing any of the charges requested, and several assignments of error presenting appellants' objections to such action, and the propositions thereunder, are severally overruled.

The court did not commit material error in submitting to the jury the issue of whether there were losses, as complained of in the third assignment. If, as appellants contend, the evidence was undisputed that there were losses, this charge could not have misled the jury. Moreover, if error, it was harmless in view of the finding that there was no partnership and hence the matter of losses immaterial. In view of the evidence it is inconceivable that the jury found that there was a partnership but no losses.

By their fifteenth assignment of error it is urged by appellants that the court erred in overruling their motion for a new trial, on the ground that the overwhelming weight of the evidence established the partnership as claimed by them. We have examined the evidence in the record very carefully and while it would have sustained a verdict for appellants on this issue, it does not so preponderate in favor of such finding as to authorize this court to disturb it. Much of the evidence relied upon by appellants—that is, the telegrams and the letters of Moses of September 7, 1907, and other letters—is consistent with appellee's claim. It had just been incorporated for the purpose of buying and selling lumber on commission, and was naturally anxious to get business. The Grubbs stock was rather a large order, and it was perfectly natural that appellee should have been anxious for appellants to buy it, so that it could get to handle it on commission. The larger the profits, the larger the commission. We do not say that this evidence is inconsistent with appellants' contention, but only that it is not, in one view which may reasonably be taken of it, inconsistent with appellee's contention as to the nature of the contract. Nor is it of controlling significance that appellee rendered to appellants statements in which they charged themselves with so much "profits." The principal evidence, however, is the testimony of appellants on the one hand and of Moses on the other, and according to Moses' testimony the only connection of the appellee with the transaction is that they were to sell the lumber for a commission of one-third of the profits. If that is true there was no partnership. The transaction by which appellants borrowed $750 from appellee and gave their note therefor, when, according to their contention, appellee owed them this and much more as its share of the purchase price of the lumber, is so strongly corroborative of Moses' testimony as to the nature of the contract, that it is not surprising if much force

was attached to this circumstance by the jury, even in view of appellants' explanation of it.

Our conclusion is that the evidence is sufficient to support the verdict, and that there is no such preponderance, if in fact there is any, as would authorize us to set it aside.

We find no error. in the record and the judgment is affirmed.

Affirmed.